**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -v- | ) | 3:10-cv-03015 |
| | ) | 3:07-cr-30060 |
| Adam C. Bordeaux, | ) | |
| | ) | **ORDER DENYING MOTION** |
| Defendant. | ) | |

_____

Before the Court is Adam C. Bordeaux's amended motion pursuant to 28 U.S.C. § 2255 and a memorandum in support of the motion, which was signed on October 13, 2010. See Case No. 3:10-cv-03015, Docket No. 4. The original motion was signed on July 7, 2010. See Case No. 3:10-cv-03015, Docket No. 1. The motion is filed pro se. The government filed an answer and brief in opposition to Bordeaux's motion on December 23, 2010. See Case No. 1:10-cv-01013, Docket Nos. 6 and 7. Bordeaux did not file a reply. For the reasons explained below, the motion is denied.

**I.   BACKGROUND**

   **A.   Factual Background**

The following summary of the underlying facts is taken from the direct appeal:

On the night of July 4, 2007, Adam Bordeaux, his girlfriend, Frances Spotted War Bonnet, their baby, and Bordeaux's friend Jeff Prue went to Bordeaux's mother's house to set off fireworks with other friends and family members. While at his mother's house, Bordeaux retrieved his gun, a semiautomatic Hi-Point 995 Pro 9 mm carbine rifle, as well as some ammunition, and put them in the trunk of his car. Later, Bordeaux drove the foursome to the Paul Mart gas station and convenience store in Rosebud, South Dakota to drop off Prue. When Bordeaux arrived at Paul Mart, Tristan Saupitty was there filling his car with gas. Saupitty had been driving

1

back from a fireworks celebration at the Tribes Casino with passengers R.F., W.S., L.R.B., and Michelle Boyd when his vehicle ran out of gas. Luke Burning Breast towed Saupitty and his passengers to Paul Mart to refuel.

Bordeaux saw Saupitty and his four passengers, but Bordeaux and Saupitty did not orally acknowledge one another at Paul Mart. However, Bordeaux later told a police officer that seeing Saupitty made him worry that Saupitty might harm him. At trial, Bordeaux testified that Saupitty had previously threatened to harm him or his family's property. Bordeaux told police investigators that he believed that Saupitty and R.F. had shot out several windows on Bordeaux's mother's car.

When Bordeaux left the gas station with Spotted War Bonnet and their baby still in the car, he turned right and went down the road toward the Rosebud Dam, stopped the car, and took the rifle out of the trunk and placed it on the front seat. He then drove to Spotted Tail Drive and turned down the road. Around the same time, Saupitty and his passengers left Paul Mart and went to get money to pay Burning Breast for the tow. Burning Breast followed Saupitty in a second car along with a passenger. Saupitty turned onto Spotted Tail Drive, encountering Bordeaux for the second time that evening. The following facts are disputed, but Bordeaux, Spotted War Bonnet, and Burning Breast testified that Saupitty accelerated and swerved his car toward Bordeaux's. Saupitty testified that he did not even notice Bordeaux, and R.F. testified that Saupitty did not swerve. After this incident, Bordeaux continued to his cousin Robert Jordan's house on Main Street. Saupitty also stopped his car on Main Street to speak with a friend, C.F., within view of Jordan's house. Burning Breast continued to follow behind Saupitty.

After speaking with C.F. for a few minutes, Saupitty began driving in the direction of Jordan's house where Bordeaux was standing near his car. Bordeaux testified that he shot at Saupitty because Saupitty was driving in a threatening manner toward his car, while Spotted War Bonnet and the baby were still inside it. Saupitty testified that his car was still stopped when Bordeaux fired the first shots. Bordeaux also testified that he was only trying to disable the vehicle. Four shots hit the front of the car, near the radiator and license plate and in the left-front corner of the hood. As Saupitty approached Bordeaux's car, he swerved toward it, and then continued past Bordeaux. Bordeaux fired two shots at the side of the car: one on the driver-side door, and one near the gas cap cover. Bordeaux shot at the car four more times after it passed him; two of the shots broke out the back windshield and two other shots hit the driver's side rear taillight. He testified that the final shots were to frighten Saupitty and keep him from "com [ing] around again...." No one was seriously injured in Saupitty's car, but he and the four passengers testified that they were frightened. Investigators later recovered bullet fragments from the car's interior, including from the headrest, the dashboard, and a floor mat. In addition to the back windshield being broken out by two shots, another shot traveled through the front windshield of the car.

>After the shooting, Bordeaux went to his sister's home, left Spotted War Bonnet and the baby there, and threw his gun into some weeds in the backyard. He then went to Jordan's sister's home to stay the night. The next day, Bordeaux turned himself in after stopping to see his baby daughter.

At trial, Bordeaux argued that he acted in self-defense, and the jury was instructed on the defense. The jury acquitted Bordeaux of the assault charge against Saupitty, but convicted him of assaulting all four passengers. In addition, Bordeaux was convicted of the firearms charge.

United States v. Bordeaux, 570 F.3d 1041, 1045 (8th Cir. 2009).

### B. Procedural Background

Bordeaux was charged in a six count indictment filed on July 25, 2007. The case was tried to a jury which returned its verdict on February 28, 2008. Bordeaux was convicted of one count of assault with a dangerous weapon in violation of 18 U.S.C. §§ 1153 and 113(a)(3) (Count V); three counts of assault with a dangerous weapon against a person who had not attained the age of 18 years in violation of 18 U.S.C. §§ 1153, 113(a)(3) and 3559 (the Adam Walsh Act) (Counts II, III, and IV); and one count of discharging a firearm during a crime of violence in violation of 18 U.S.C. §§ 1153, 113(a)(3), and 924(c)(1)(A)(iii) (Count VI). He was acquitted on a second count of assault with a dangerous weapon (Count I). He was sentenced to a total of 240 months imprisonment on May 29, 2008. Specifically, minimum mandatory 120 month sentences were imposed on Counts II, III, and IV. A 27 month sentence was imposed on Count V. The sentences on Counts II, III, IV, and V are concurrent. A minimum mandatory 120 month consecutive sentence was imposed on Count VI as required by 18 U.S.C. § 924(c)(1)(A)(iii).

An appeal was taken. The conviction was affirmed on July 7, 2009. United States v. Bordeaux, 570 F.3d 1041 (8th Cir. 2009). Bordeaux did not petition the Supreme Court for a writ of certiorari. Bordeaux's § 2255 motion was signed on July 7, 2010, and filed on July 13, 2010. He

3

did not file a brief or memorandum in support of his motion. Bordeaux moved to dismiss his § 2255 motion on September 15, 2010. His stated purpose for wanting to dismiss his motion was that so he could refile the motion along with a brief and raise additional issues. The Court denied the motion in an order dated September 21, 2010, finding that the better course of action would be to simply permit Bordeaux to filed an amended motion and brief. The Court gave Bordeaux until November 15, 2010, to file an amended motion and brief in support. Bordeaux's amended § 2255 motion was signed on October 13, 2010, and filed on October 18, 2010. Bordeaux raises three grounds for relief in his amended petition: (1) Native Americans were excluded from the jury pool; (2) he received ineffective assistance from appellate counsel who failed to raise the issue of discriminatory jury selection on appeal; and (3) he received ineffective assistance from trial counsel who failed to challenge the constitutionality of the consecutive minimum mandatory sentences he received. The government filed a response to the motion on December 23, 2010, in which it argued the motion should be denied.

**II.   DISCUSSION**

A motion made pursuant to 28 U.S.C. § 2255 requires a showing of either constitutional or jurisdictional error, or a "fundamental defect" resulting in a "complete miscarriage of justice." Davis v. United States, 417 U.S. 333, 346 (1974); Hill v. United States, 368 U.S. 424, 428 (1962). A § 2255 motion is not a substitute for a direct appeal and is not the proper way to complain about simple trial errors. Anderson v. United States, 25 F.3d 704, 706 (8th Cir. 1994). A § 2255 movant "must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). Section 2255 is "intended to afford federal prisoners a remedy identical

in scope to federal habeas corpus." Davis, 417 U.S. at 343.

### A.     Jury Selection

Bordeaux's motion raises both Batson[1] and Duren[2] claims relating to the jury selection process and a Sixth Amendment claim of ineffective assistance of appellate counsel based upon the failure of appellate counsel to raise the Batson and Duren claims on direct appeal. The government argues the claims are meritless and that Bordeaux has procedurally defaulted his Batson and Duren claims by failing to raise them on direct appeal.

In order to succeed on his Batson and Duren claims, Bordeaux must show that his claims have not been procedurally defaulted. See Becht v. United States, 403 F.3d 541, 545 (8th Cir. 2005). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." Id. (quoting Bousley v. United States, 523 U.S. 614, 622 (1998)). The procedural default rule does not apply to claims of ineffective assistance of counsel. Massaro v. United States, 538 U.S. 500, 504-05 ((2003); United States v. Smith, 843 F.2d 1148, 1150 (8th Cir. 1988). There is no question that Bordeaux failed to raise the Batson and Duren arguments on direct appeal and thus they are procedurally defaulted. Bordeaux does not claim actual innocence. Consequently, the Court need only consider whether he has demonstrated both cause and actual prejudice. The cause and actual prejudice that must be shown to overcome a

---

[1] Batson v. Ky., 476 U.S. 79 (1986) (finding the use of peremptory challenges in a racially motivated manner violates the Equal Protection Clause).

[2] Duren v. Mo., 439 U.S. 357 (1979) (finding the Sixth Amendment requires juries be comprised of a fair cross-section of the community).

procedurally defaulted claim may be met by a showing of ineffective assistance of appellate counsel. Becht, 403 F.3d at 545. Thus, the showing necessary for Bordeaux to proceed on his Batson and Duren claims is the same as the showing necessary to prevail on his ineffective assistance of appellate counsel claim. Becht, 403 F.3d at 545.

The two-part test for ineffective assistance of counsel was announced in Strickland v. Washington, 466 U.S. 668, 687 (1984). The test is the same no matter whether the alleged ineffectiveness is attributable to trial or appellate counsel. See United States v. Brown, 528 F.3d 1030, 1032 (8th Cir. 2008). Bordeaux must first establish that counsel's representation was constitutionally deficient, which requires a showing that counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687-88; see also Wiggins v. Smith, 539 U.S. 510 (2003). This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Strickland, 466 U.S. at 687. In considering whether this showing has been accomplished, "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689. If the underlying claim (i.e., the alleged deficient performance) would have been rejected, counsel's performance is not deficient. Carter v. Hopkins, 92 F.3d 666, 671 (8th Cir. 1996). Courts seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. Id. The Court need not address the issue of the reasonableness if Bordeaux has failed to establish prejudice. Strickland, 466 U.S. at 696.

Bordeaux must also show that the deficient performance prejudiced his defense. Strickland, 466 U.S. at 687. This requires proving that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been more favorable to the defendant. Id. at 690-91. A

6

reasonable probability is one "sufficient to undermine confidence in the outcome." Wiggins v. Smith, 539 U.S. 510, 534 (2003). In the context of alleged ineffectiveness of appellate counsel, it must be shown to a reasonable probability that the outcome of the appeal would have been different in order to demonstrate prejudice. Brown, 528 F.3d at 1032. Failure to raise a issue on appeal is presumed to be sound strategy absent evidence to the contrary. Id.

In order to determine whether there is a reasonable probability the result of Bordeaux's appeal would have been different the Court must consider what the Eighth Circuit would have done had Bordeaux raised his Batson and Duren claims on appeal. Becht, 403 F.3d 546.

### 1.     Batson

The Eighth Circuit explained how a Batson challenge should be reviewed in United States v. Maxwell:

> In Batson, the Supreme Court described a three-part analysis for determining whether a party impermissibly struck a potential juror on account of the juror's race. 476 U.S. at 96-98, 106 S.Ct. 1712. First, the party objecting to the strike must make a prima facie showing that the strike was racially motivated. Id. at 96-97, 106 S.Ct. 1712. The burden then shifts to the striking party to present a race-neutral explanation for the strike. Id. at 97-98, 106 S.Ct. 1712. Once the striking party offers a race-neutral explanation for the strike, the objecting party may come forward with a reason or reasons why the proffered explanation is really a pretext for discrimination. United States v. Scott, 26 F.3d 1458, 1467 (8th Cir.) (noting that an objecting party bears the burden of establishing pretext once a race-neutral explanation has been offered), cert. denied, 513 U.S. 1019, 115 S.Ct. 584, 130 L.Ed.2d 498 (1994). Finally, the district court must determine whether the party objecting to the strike has carried the burden of proving that the strikes were motivated by purposeful race discrimination. Batson, 476 U.S. at 98, 106 S.Ct. 1712; see Purkett v. Elem, 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam). The Supreme Court has recognized that the findings underlying a district court's Batson analysis depend largely on credibility evaluations and has directed reviewing courts to "give those findings great deference." 476 U.S. at 98 n. 21, 106 S.Ct. 1712. Therefore, we review the District Court's Batson ruling for clear error, United States v. Pherigo, 327 F.3d 690, 695 (8th Cir.), cert. denied, 540

> U.S. 960, 124 S.Ct. 420, 157 L.Ed.2d 300 (2003), according great deference to the court's findings, United States v. Roebke, 333 F.3d 911, 912 (8th Cir. 2003), and keeping in mind that "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from" the party opposing the strike, Purkett, 514 U.S. at 768, 115 S.Ct. 1769.

473 F.3d 868, 871 (8th Cir. 2007).

In this case, the government used one of its six peremptory challenges to remove the sole Native American, F.C., from the jury panel. Bordeaux objected to the government's decision to strike F.C., arguing she was the only Native American on the twenty-eight member jury panel. See Case No. 3:07-cr-30060, Docket No. 120, pp. 34-36. The government explained that it struck F.C. because her ex-husband was in prison and law enforcement had had numerous contacts with her children. See United States v. Granados, 596 F.3d 970, 975 (8th Cir. 2010) (holding that incarceration of a family member is a valid race-neutral reason for exercising a peremptory challenge); United States v. Brown, 560 F.3d 754, 763 (8th Cir. 2009) (concluding that negative experiences with law enforcement officials is a legitimate race-neutral reason for exercising a peremptory challenge). The government decided that F.C. would not make a good juror for the government because of these experiences. Bordeaux argued in response that F.C. had not raised her hand when the government asked the entire panel if any of them could not give the government a fair trial. The undersigned accepted the government's race-neutral reasons for striking F.C. and concluded Bordeaux had failed to rebut the government's explanation with evidence of pretext.

Bordeaux has failed to present any evidence in his motion to support his argument that the government's reasons for challenging F.C. were pretextual. He simply repeats the argument made at trial that F.C. was the only Native American on the panel. Bordeaux has not met his burden. This is especially evident when one considers the great deference reviewing courts give trial court

determinations on Batson challenges. Maxwell, 473 F.3d at 871. Bordeaux has failed to demonstrate he was prejudiced by his counsel's decision not to pursue the Batson issue on appeal. Given the lack of evidence of pretext this appears to have been a sound appellate strategy as it allowed counsel to focus on more tenable claims. Having failed to establish prejudice for ineffective assistance of appellate counsel purposes, he has consequently failed to demonstrate the cause and prejudice necessary to excuse his procedural default.

### 2.     **Duren**

A Duren challenge presents a mixed question of law and fact which calls for de novo review. United States v. Morin, 338 F.3d 838, 843 (8th Cir. 2003); United States v. Sanchez, 156 F.3d 875, 879 (8th Cir.1998). In order for Bordeaux to prevail on his claim that the District of South Dakota's particular method of jury selection violates his Sixth Amendment right to a jury comprised of a fair cross-section of the community, he must show that "(1) Native Americans are a distinctive group in the community; (2) their representation in his venire was not fair and reasonable in relation to their representation in the community; and (3) their under-representation resulted from their systematic exclusion from the jury-selection process." Morin, 338 F.3d at 843.

There can be little doubt that Native Americans constitute a distinctive group in South Dakota. The record is undeveloped as to the second prong although there was at least one Native American in the venire; the removal of juror F.C. was the subject of Bordeaux's Batson challenge. But even if Bordeaux could establish that the representation of Native Americans in the venire was not fair and reasonable, he has failed to show that Native Americans are systematically excluded. The District of South Dakota's Plan for the Random Selection of Grand and Petit Jurors calls for

potential jurors to be called exclusively from a list of registered voters provided by the South Dakota Secretary of State. See Docket No. 7-1. The Eighth Circuit has consistently upheld the use of voter registration lists to select jury pools. Morin, 338 F.3d at 844; Sanchez, 156 F.3d at 879. Bordeaux has presented no evidence whatsoever that Native Americans living in South Dakota face obstacles in the voter registration process. Although Bordeaux argues the lack of Native Americans in the jury pool proves his case, simple statistical disparities between the number of Native Americans represented in the general population and jury pools do not by themselves establish systematic exclusion. Sanchez, 156 F.3d at 879.

Bordeaux's appellate counsel can hardly be faulted for choosing not to raise a claim which would have little or no chance of success. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal." United States v. Brown, 528 F.3d 1030, 1033 (8th Cir. 2008) (quoting Jones v. Barnes, 463 U.S. 745, 751 (1983). Bordeaux has failed to present any evidence of prejudice from his counsel's performance on direct appeal. Consequently, he has failed to establish ineffective assistance of appellate counsel or the cause and prejudice necessary to excuse his procedural default.

### B.     Consecutive Sentences

Bordeaux claims he received ineffective assistance of counsel at sentencing. Specifically, he argues his attorney should have challenged the constitutionality of the consecutive ten year minimum mandatory sentence he received. In support of his argument Bordeaux cites United States v. Abbott, 574 F.3d 203 (3d. Cir. 2009) (construing § 924c's "except clause") cert. granted, 130 S.Ct. 1284 (2010), United States v. Gould, 329 F.App'x. 569 (5th Cir. 2009) (same) cert. granted,

130 S.Ct. 1283 (2010), and United States v. Whitley, 529 F.3d 150 (2nd cir. 2008) (same).

The government argues Bordeaux's sentencing argument is untimely and that the Supreme Court decision in Abbott v. United States, 131 S.Ct. 18 (2010) (resolving division among Circuits as to the proper construction of § 924c's "except clause"), forecloses the argument.

### 1. Timeliness

Motions to vacate, set aside or correct sentence filed pursuant to 28 U.S.C. § 2255 are subject to the following period of limitations:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

If, following the disposition of his direct appeal, a federal prisoner petitions the United States Supreme Court for a writ of certiorari, the conviction becomes final when the Supreme Court either denies certiorari or issues a decision on the merits. See United States v. Cottage, 307 F.3d 494, 498 (6th Cir. 2002) see also Washington v. United States, 243 F.3d 1299, 1300 (11th Cir.2001); Kapral

v. United States, 166 F.3d 565, 577 (3d. Cir. 1999). If the federal prisoner does not file a timely certiorari petition after disposition of his direct appeal, the conviction becomes final on the date on which the prisoner's time for filing such a petition expires. See Clay v. United States, 537 U.S. 522, 525-26 (2003) ("for the purpose of starting the clock on § 2255's one-year limitation period, we hold, a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction").

The judgment affirming Bordeaux's conviction was entered on July 7, 2009. Bordeaux, 570 F.3d at 1041. Bordeaux did not petition the Supreme Court for a writ of certiorari. The time in which he could have petitioned for certiorari expired on October 5, 2009, or 90 days after entry of the Court of Appeals' judgment. See Sup. Ct. R. 13(1); Clay, 537 U.S. at 525. Consequently, his conviction became final for purposes of § 2255 on October 5, 2009, and his one-year window within which to file a § 2255 motion closed on October 5, 2010. Bordeaux's original motion was signed on July 7, 2010, and thus was timely filed. The amended motion was signed on October 13, 2010.[3] As the amended motion was filed eight days after the one-year limitations period expired it was untimely. See United States v. Hernandez, 436 F.3d 851, 856 (8th Cir. 2006) (explaining that amended § 2255 motions must be filed within the one-year limitations period). Claims raised in an amended § 2255 motion may be deemed timely if the new claim relates back to the timely filed motion as allowed by Rule 15(c) of the Federal Rules of Civil Procedure. See Dodd v. United States, 614 F.3d 512, 515 (8th Cir. 2010). A claim raised in an amended § 2255 motion relates back

---

[3] The government in its brief has by implication suggested that Bordeaux be given, and the Court has given Bordeaux, the benefit of the "prison mail box rule," which provides that pro se prisoner filings are considered timely if they are deposited in the prison's internal mail system on or before the last day for filing. See United States v. Mijares, No. 4:06CR3019-2, 2009 WL 1783559, at *3 (D. Neb. June 222, 2009) citing Grady v. United States, 269 F.3d 913 (8th Cir. 2001).

if the claim arises out the same "conduct, transaction, or occurrence set out ... in the original motion." Id. New claims must arise out of the same set of facts as the original claims in order to meet the relation back standard. Id. It is not enough that both the original motion and the amended motion raise claims of ineffective assistance of counsel. Id. The new claim must be of the same type as the original claim such that it can be said to arise from the same set off core facts. Id. For instance, a new claim alleging ineffective assistance in the cross-examination of witnesses does not relate back to an earlier claim of ineffective assistance for failing to make evidentiary objections. Id. Failure to file an appeal is not the same type of ineffective assistance as failure to seek a downward departure at sentencing. Id.

In this case the original motion raised two ineffective assistance issues related to jury selection and the number of Native Americans in the jury pool. The amended motion restated the two original claims and also raised a third claim of ineffective assistance at sentencing for failure to challenge the constitutionality of his consecutive minimum mandatory sentence. The two original claims related to jury selection and the new third claim relates to sentencing. The original motion made no mention of the sentence Bordeaux received. The third claim cannot be said to relate back to the original claims as it in no way arises from the same core facts underlying the claims in the original motion.

The only remaining with question is whether Bordeaux's deadline for filing the petition could be equitably tolled. The Eighth Circuit has recognized that equitable tolling is only appropriate where "extraordinary circumstances" beyond a prisoner's control prevent timely filing. United States v. Martin, 408 F.3d 1089, 1093-94 (8th Cir. 2005); see also E.J.R.E v. United States, 453 F.3d 1094, 1098 (8th Cir. 2006) (adding that a movant must also demonstrate he acted with due

diligence in pursuing his motion). Equitable tolling also applies when external conduct or circumstances not attributable to the movant's actions lull the movant into inaction through reliance on that conduct. Hernandez, 436 F.3d at 858 (finding a court order did not lull movant into inaction).

 The present case is unique in that Bordeaux moved the Court to dismiss his motion so that he might refile the motion, raise additional issues, and file a supporting memorandum. See Docket No. 2. The original motion was not accompanied by a supporting memorandum. Bordeaux did not state in his motion to dismiss what new issues he wished to raise. The Court, cognizant that Bordeaux was acting pro se, denied the motion but granted Bordeaux permission to file an amended petition and brief in an order filed September 21, 2010. See Docket No. 3. The Court gave Bordeaux until November 15, 2010, to file the amended motion while noting in a footnote that the one-year filing deadline was October 5, 2010. The Court's order is somewhat vague as to what was expected on Bordeaux. Unlike the order in question in Hernandez which called for the movant to supplement and explain the original findings, this Court's order merely stated that Bordeaux would have until November 15, 2010, "to file an amended motion and brief." See Docket No. 3. On the other hand the Court did note, albeit in a footnote, that the limitations period would run on October 5, 2010. There is no indication in the record that Bordeaux could not have filed his amended motion by October 5, 2010, in order to bring forth his new claim in a timely fashion. The Court's order may not have been a model of clarity, but given the Eighth Circuit's warning that confusion over and miscalculation of the limitations period does not warrant equitable tolling, the Court concludes that its order should not have lulled Bordeaux into inaction. See Hernandez, 436 F.3d at 858.

### 2. Except Clause

Even if the Court were to conclude that Bordeaux's sentencing argument was timely, the argument fails on the merits. Bordeaux was convicted of discharging a firearm during a crime of violence in violation of 18 U.S.C. §§ 1553, 113(a)(3), and 924(c)(1)(A)(iii) ("gun charge"). This resulted in a ten-year minimum mandatory sentence which was required by statute to run consecutively to his sentence on the four counts of assault with a dangerous weapon for which he was also convicted.

The disputed "except clause" provision provides as follows:

(C)(1(A) <u>Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law</u>, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime--

  (i) be sentenced to a term of imprisonment of not less than 5 years;

  (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and

  (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

(B) If the firearm possessed by a person convicted of a violation of this subsection--

(i) is a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon, the person shall be sentenced to a term of imprisonment of not less than 10 years; or

(ii) is a machinegun or a destructive device, or is equipped with a firearm silencer or firearm muffler, the person shall be sentenced to a term of imprisonment of not less than 30 years.

(C) In the case of a second or subsequent conviction under this subsection, the person shall--

>> (i) be sentenced to a term of imprisonment of not less than 25 years; and
>
> (ii) if the firearm involved is a machinegun or a destructive device, or is equipped with a firearm silencer or firearm muffler, be sentenced to imprisonment for life.
>
> (D) Notwithstanding any other provision of law--
>
> (i) a court shall not place on probation any person convicted of a violation of this subsection; and
>
> (ii) no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed.

18 U.S.C. § 924(c)(1) (emphasis added).

Bordeaux argues that his attorney should have argued at sentencing, based upon the decision in United States v. Whitley, 529 F.3d 150 (2nd Cir. 2008), that his ten year consecutive sentence on the gun charge was unconstitutional. In Whitley the Second Circuit held the "except clause" to mean that any time a defendant is subject to two minimum mandatory sentences and one of those sentences is required by § 924(c), only the higher minimum should apply. Whitley, 529 F.3d 155. Whitley was decided June 16, 2008, eighteen days after Bordeaux was sentenced on May 29, 2008. Counsel can hardly be faulted for failing to raise the issue at sentencing as the case had not yet been decided. The issue could have been raised on appeal but if it had been raised it would have failed because, at the time Bordeaux was sentenced, the construction of the "except clause" was governed by United States v. Alaniz, 235 F.3d 386, 389 (8th Cir. 2000), which held that when a defendant is subject to two minimum mandatory sentences, any sentence required by § 924(c) must run consecutively to the predicate offense. Indeed, the Second Circuit in Whitley specifically analyzed Alaniz and rejected the construction given the "except clause" by the Eighth Circuit. Whitley, 529

F.3d 153.

Bordeaux raised his sentencing argument prior to the Supreme Court's decision in Abbott v. United States, 131 S.Ct. 18 (2010), but after certiorari had been granted and in the apparent hope that the Supreme Court would agree with the Second Circuit rather than the Eighth Circuit. Unfortunately for Bordeaux, the Supreme Court did not agree with the Second Circuit.

In Abbott the Supreme Court held that "a defendant is subject to a mandatory consecutive sentence for a § 924(c) conviction, and is not spared from that sentence by virtue of receiving a higher mandatory minimum on a different count of conviction." Id. at 23. The Supreme Court further explained that a § 924(c) sentence must run consecutively to the predicate crime. Id. at 30. The, "except to the extent that a greater minimum sentence is otherwise provided by this subsection" portion of the "except clause" prohibits the stacking of § 924(c) sentences when a defendant violates more than one of § 924(c)'s prohibitions, such as both brandishing and discharging a firearm. Id. at 30. The "any other provision of law" provision also provides a no-stacking instruction to sentencing judges when both § 924(c) and another statute punish conduct which offends § 924(c). Id. The Supreme Court's decision in Abbott effectively overruled Whitley. See United States v. Tejada, No. 07-3419, WL 420670 (2d. Cir. Feb. 9, 2011) (recognizing abrogation of Whitley).

The purpose of § 924(c) is to provide additional consecutive punishment when a drug crime or crime of violence is committed with a gun. Alaniz, 235 F.3d at 389. Bordeaux was convicted of assault with a dangerous weapon and discharging a firearm during a crime of violence. Both Alaniz and Abbott require the sentence on the gun charge to be consecutive. Since Bordeaux could not have prevailed on this issue, counsel cannot be said to have been ineffective for failing to raise or preserve the issue.

### III. CONCLUSION

Based upon the entire file and upon the foregoing discussion, it is **ORDERED** that:

1. Judgment be entered for the United States and against Bordeaux and that Bordeaux's § 2255 motion is **DENIED** with prejudice.

2. The Court certifies that an appeal from the denial of this motion may not be taken in forma pauperis because such a appeal would be frivolous and cannot be taken in good faith. Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

3. Upon the entire record before the Court, dismissal of the motion is not debatable, reasonably subject to a different outcome on appeal, or otherwise deserving of further proceedings. Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983). Therefore, a certificate of appealability will not be issued by this Court.

4. If the Defendant desires further review of his motion he may request issuance of a certificate of appealability by a circuit judge of the Court of Appeals for the Eighth Circuit in accordance with Tiedeman v. Benson, 122 F.3d 518, 520-22 (8th Cir. 1997).

**IT IS SO ORDERED.**

Dated this 21st day of April, 2011.

/s/ *Patrick A. Conmy*
Patrick A. Conmy, Senior District Judge
United States District Court